# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 9-CV-2031 (JFB) (AKT)

———————————

DUANE MOORE,

Plaintiff,

VERSUS

THE COUNTY OF SUFFOLK, ET AL.,

Defendants.

———————————

**MEMORANDUM AND ORDER**
March 30, 2012

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Duane Moore ("plaintiff") commenced this action on May 13, 2009 against defendants County of Suffolk ("County"), Town of Southampton ("Town"), Mark Epley in his official capacity as Mayor of the Village of Southampton ("Epley"), and William Wilson, Jr. in his official capacity as Chief of Police of the Southampton Village Police Department ("Wilson") (collectively "defendants") seeking to declare Article I, Chapter § 428 of the Suffolk County Local Law ("County Law" or "County Law § 428" or "§ 428") and Article 1, §§ 215-1 through 215-5 of the Code of the Town of Southampton ("Town Law" or "Town Law § 215" or "§ 215") unconstitutional and to enjoin defendants from enforcing them. County Law § 428 and Town Law § 215 prohibit sex offenders from living within certain distances of places such as schools, playgrounds, or day-care centers. Specifically, plaintiff alleges that the County and Town Laws violate the Ex Post Facto Clause and the Due Process and Equal Protection Clauses of the 14th Amendment. Plaintiff further argues that New York State law preempts these local laws. Plaintiff seeks compensatory, declaratory, and injunctive relief against defendants.

The County moves to dismiss, arguing that the court should abstain from deciding the state preemption claims under the *Pullman* doctrine. *See generally Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). The County argues, in the alternative, that the Court should dismiss the federal law claims and decline to exercise supplemental jurisdiction over the state law

claim. The County further argues that the plaintiff lacks standing to challenge the County law without simultaneously challenging the New York State version of the law. Finally, the County argues that the plaintiff fails to state a claim as to any of the alleged constitutional violations.

The Town moves to dismiss, also arguing that the Court should abstain from deciding the state preemption claims under the *Pullman* doctrine. The Town further argues that the plaintiff fails to state a claim as to any of the alleged constitutional violations, and that New York State law does not preempt the local law. Finally, the Town argues that the plaintiff lacks standing because he fails to allege any concrete, particularized injury-in-fact.

Defendants Epley and Wilson move to dismiss on the grounds that plaintiff fails to state a plausible claim for relief against them, and, arguing that, in any event, they are entitled to qualified immunity.

For the reasons set forth below, the Court denies defendants' motions to dismiss on the grounds of standing and *Pullman* abstention. Moreover, the Court, in its discretion, intends to exercise supplemental jurisdiction over the pendent state law claim and decide the state law preemption issue first, because it is likely to render the federal constitutional claims moot. However, because the County had raised a procedural objection at one point to the Court deciding the state law preemption issue without a formal motion by plaintiff for summary judgment and injunctive relief, the Court will require plaintiff to make that motion and allow any party to make additional submissions on the state preemption issue, if they wish. Finally, the motions to dismiss the federal claims are denied without prejudice to renewal, if necessary, after the Court addresses the issue of whether the Town and County laws are preempted by New York State law under New York common law and the Municipal Home Rule Law.[1]

## I. BACKGROUND

### A. Facts

The plaintiff is classified as a Level 3 sex offender under New York State's Sex Offender Registration Act ("SORA"), N.Y. Correct. Law §§ 168 *et seq.* (Compl. ¶ 12.)[2] Plaintiff is classified as a sex offender because, on May 21, 1982, he pled guilty to rape in the first degree and assault in the second degree in Nassau County, for which he was sentenced to 8 1/3 to 25 years and 2 1/3 to 7 years, respectively. Plaintiff was released on November 2, 2001 to parole supervision. (Compl. ¶ 15.)

On April 27, 2005, plaintiff and his fiancé jointly purchased a home located at 444 North Sea Road in the Village of Southampton. (*Id.* ¶ 19.) Before the plaintiff could occupy that home, the State of New York enacted legislation that prohibited convicted sex offenders who were on probation, conditional discharge, or parole from residing within 1000 feet of a day care center or school. *See* N.Y. Penal Law § 65.10(4-a), § 220.00(14); N.Y. Exec. Law § 259-c(14); Compl. ¶ 19. Plaintiff's home at 444 North Sea Road was located within 1000 feet of a day care center, so the New York State Division of Parole prohibited the

---

[1] Plaintiff has made clear that he seeks no monetary damages against Epley and Wilson, but rather simply is seeking to enjoin them from enforcement of the laws at issue. (Pl.'s Ans. to Def.'s Mot. to Dismiss at 63, July 9, 2010, ECF No. 41.) Therefore, if plaintiff prevails on the state preemption issue, and obtains the requested injunction, the federal claims against the defendants, including the individual defendants, will be moot.

[2] "Compl." refers to Plaintiff's Amended Complaint, Mar. 31, 2010, ECF No. 33.

plaintiff from residing at that location. (Compl. ¶ 19.) Plaintiff was released from parole supervision in November 2011, and thus has regained full rights to live wherever he pleases under applicable state law. (Sealed Declaration of Rudolph M. Baptiste ("Baptiste Decl."), Ex. A, Oct. 13, 2009, ECF No. 22.)

In October 2006, plaintiff's parole officer verbally granted plaintiff permission to purchase a house located at 99 Miller Road in the Village of Southampton, which is in the County of Suffolk. (*Id.* ¶ 20.) Plaintiff closed on the purchase on December 15, 2006 and moved into the house with his fiancé. (*Id.* ¶ 21.) On December 22, 2006, plaintiff's parole officer updated plaintiff's parole conditions to reflect the change of address. (*Id.*) On January 3, 2007, plaintiff registered his new address with the New York State Division of Criminal Justice Services, Sex Offender Registry. (*Id.* ¶ 22.) Two days later, plaintiff visited the Southampton Police Department and informed Detective Herman Lamison that he needed to register as a Level 3 Sex Offender. (*Id.*) Plaintiff provided Detective Lamison with the names and addresses of his parole officer, employer, family members, and friends, as well as his previous address and police jurisdiction. (*Id.*)

On January 22, 2007, the Southampton School District sent a letter to the parents of school children containing the plaintiff's photograph and details from a website informing them that a dangerous Level 3 sex offender had moved to the Town. (*Id.* ¶ 23.) On January 29, 2007, Epley, Wilson, County Legislator Jay Schneiderman, and approximately fifty Southampton residents held a community meeting at a local Church to discuss the plaintiff's residence at 99 Miller Road. (*Id.* ¶ 25.)

On February 1, 2007, three officers of the New York State Division of Parole entered plaintiff's home wearing bulletproof vests and carrying guns. (*Id.* ¶ 26.) Plaintiff was celebrating his birthday with his fiancé and friends. (*Id.*) The officers questioned all of the visitors, forced them to leave, and searched the house "extensively." (*Id.*) On February 8, 2007, Wilson sent a certified letter to plaintiff stating that plaintiff was in violation of Suffolk County Law § 428 and would be expected to take "immediate action" to comply with the law. (*Id.* ¶ 27.)

On or about March 19, 2007, the Division of Parole granted plaintiff permission to purchase a home at 168 Longview Road in Southampton. (*Id.* ¶ 29.) On or about April 1, 2007, the Southampton Police Department gave plaintiff 45 days to move from Miller Road. (*Id.* ¶ 30.) Plaintiff purchased the property at 168 Longview Road on May 8, 2007, and moved there on May 15, 2007. (*Id.* ¶ 31.)

B. The Laws

Suffolk County Legislature adopted Suffolk County Local Law § 428, also known as Suffolk County Local Law #12-2006, on February 7, 2006. The law prohibits registered sex offenders from "resid[ing] within 1/4 mile of the property line of any school, including, but not limited to, any public or private nursery, elementary, middle or high school; or a licensed day-care center; or a playground."[3] § 428-3. The law applies to sex offenders

---

[3] "Day-Care Center" is defined as any "program or facility caring for children for more than three hours per day per child, as those terms are defined in § 390 of the New York Social Services Law." § 428-2. "Playground" is defined as any "public land designated for recreational or athletic purposes by any school district, library district, or by the County of Suffolk or any town or village located wholly within the County of Suffolk." *Id.*

3

registered at any sex offender level, including Levels 1, 2, and 3.

The Town of Southampton enacted Town Law § 215 in October 2007, and amended it in December 2007. Town Law § 215 prohibits sex offenders from residing within "[o]ne mile of any school located in any school district that does not offer and fund transportation services to school for all students living within one mile of their respective school." § 215-2. The law also prohibits sex offenders from residing within "[t]wo thousand feet of any school located in any school district that offers and funds transportation services to school for all students living within one mile of their respective school." *Id.* Additionally, sex offenders may not reside within two thousand feet of any "child-care facility or municipal recreational facility." *Id.*

New York's SORA, which became effective in 1996, provides for the establishment of a convicted sex offender registry within the New York State Division of Criminal Justice Services ("DCJS"). Sex offenders who have been convicted of certain criminal offenses against minors or of sexually violent offenses must register under SORA and periodically verify certain information. N.Y. Correct. Law §§ 168-b, 168-f. SORA provides for notification to local law enforcement when a convicted sex offender is released from incarceration. *Id.* § 168-j.

A Board of Examiners consisting of five members appointed by the Governor uses guidelines set out in Correction Law § 168-l(5) to assess the risk of recidivism and the threat posed by the offender. Offenders may be classified as low risk (Level 1), moderate risk (Level 2) or high risk (Level 3) for repeating a sex offense. *Id.* § 168-1(6). The level assigned determines the extent of community notification that will apply to information concerning the offender.

### C. Procedural History

Plaintiff filed a complaint on May 13, 2009. The County of Suffolk filed a motion to dismiss the complaint on October 9, 2009.[4] Plaintiff filed an amended complaint on March 31, 2010. The County of Suffolk filed a motion to dismiss the amended complaint on April 30, 2010. Epley and Wilson filed a motion to dismiss the amended complaint on May 27, 2010. On July 9, 2010, the plaintiff filed a response in Opposition to the County's and Epley and Wilson's motions to dismiss. Epley and Wilson filed a reply on July 14, 2010, and the County filed its reply on September 20, 2010. The Court terminated the County's and Epley and Wilson's motions to dismiss on February 16, 2011 because the Town of Southampton requested a briefing schedule for a motion to dismiss, and all defendants agreed to comply with the revised briefing schedule.

On April 18, 2011, the County and the Town each filed a motion to dismiss the amended complaint. On May 18, 2011, plaintiff filed a response to the April 18, 2011 motions. On June 10, 2011, the County and Town each filed a reply in support of their motions to dismiss. Oral argument took place on November 18, 2011. The Court has fully considered all of the parties' submissions.

---

[4] The County of Suffolk's motion to dismiss the complaint was terminated by the Court on July 2, 2010 because the plaintiff had filed an amended complaint and the County filed a motion to dismiss the amended complaint.

4

## II. LEGAL STANDARDS[5]

When a court reviews a motion to dismiss for lack of subject-matter jurisdiction, it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id*. "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

When a Court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also*

---

[5] Defendants Epley and Wilson have filed a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Courts evaluate a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) under the same standard as a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Nicholas v. Goord*, 430 F.3d 652, 657 n.8 (2d Cir. 2005), *abrogated on other grounds by Samson v. California*, 547 U.S. 843 (2006).

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

III. DISCUSSION

A. Standing

As the Second Circuit has explained, "Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (citing U.S. Const. art. III, § 2 and *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-72 (1982)). "It is axiomatic that '[t]here are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision.'" *Id.* (quoting *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)); *see also Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant." (internal quotation marks omitted)).

To meet Article III's injury-in-fact requirement, plaintiff's alleged injury "must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (additional quotation marks omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see, e.g.*, *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (finding that plaintiffs had adequately articulated Article III injury by alleging that they have paid higher tolls as a result of defendant's policy). Furthermore, the alleged injury must "affect[] the plaintiff in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Baur*, 352 F.3d at 632 (internal quotation marks and citations omitted).

1. Suffolk County

Suffolk County enacted County Law § 428 on February 7, 2006.[6] Defendant moved into the house at 99 Miller Road in December of 2006. On February 8, 2007, Wilson sent a certified letter to plaintiff stating that plaintiff was in violation of Suffolk County Law § 428 and would be expected to take "immediate action" to comply with the law. Plaintiff purchased and moved into a different house at 168 Longview Road in May 2007.

---

[6] The County's Motion to Dismiss states that Suffolk County Law § 428 "was adopted by the Suffolk County Legislature on or about February 2, 2007." (County of Suffolk's Mem. of Law. in Support of Mot. to Dismiss at 3, Apr. 18, 2011, ECF No. 58.) However, the history of County Law § 428, attached as Exhibit B to the Baptiste Decl., indicates that it was adopted on February 7, 2006 by L.L. No. 12-2006.

Suffolk County argues that plaintiff lacks standing to challenge § 428 without simultaneously challenging SORA because SORA also prohibited plaintiff from living at 99 Miller Road. SORA prohibits the "knowing" entry within 1,000 feet of a day-care center by a sex offender. *See* N.Y. Penal Law § 65.10, § 220.00; N.Y. Exec. Law § 259-c(14). Plaintiff's residence at 99 Miller Road was next door to a registered day care center located at 111 Miller Road. These restrictions apply only to parolees, however, and plaintiff completed his parole term in November 2011.

As a consequence of Suffolk County Law § 428, plaintiff was forced to move from 99 Miller Road to 168 Longview Road. It is axiomatic that plaintiff has standing to challenge the Suffolk County law.

2. Southampton

Plaintiff moved into the house at 99 Miller Road in December of 2006. He moved out a few months later after being notified that he was in violation of County Law § 428. In May 2007, plaintiff purchased and moved into a house at 168 Longview Road. In October 2007, the Town of Southampton enacted its law.

The Town of Southampton argues that plaintiff lacks standing to challenge the Town's law because he established a residence at 168 Longview Road five months before the law was adopted, and the law does not prohibit level 2 or level 3 sex offenders from residing in proscribed areas when the individual established a residence before the law was enacted. Southampton maintains the position that plaintiff would need to allege in the complaint that he has made an "attempt to purchase, convey, or rent property and was thwarted by" the law from doing so. (Town of Southampton's Mem. of Law in Support of Mot. to Dismiss at 9, Apr. 18, 2011, ECF No. 59.)

The Court disagrees. Plaintiff continues to own two pieces of property in Southampton: 444 North Sea Road and 99 Miller Road. The Town Law prevents plaintiff from residing at either of those properties, along with most other properties in the Town. Plaintiff has shown an actual harm by being precluded from living in either of the first two residences he chose. As Southampton conceded at oral argument, it is not necessary that plaintiff subject himself to arrest by violating the Town law before he can acquire standing. *See Babbitt v. United Farmer Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("It is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." (quotations omitted)). Because the plaintiff was required to leave two residences located in Southampton, it is not necessary that he allege his desire to return to those properties or another property in a proscribed area in order to challenge the Town's law. Plaintiff has standing to challenge the Southampton Law.[7]

B. *Pullman* Abstention

The doctrine of constitutional avoidance is embedded in the different forms of abstention that have developed in Supreme Court jurisprudence, including, for example *Pullman* abstention or *Burford* abstention. *See generally Railroad Comm'n of Texas v.*

---

[7] Plaintiff states that he "is not complaining that § 215 prevents his living at 168 Longview Road, but rather that it forces him to reside there rather than at either of the other two pieces of property he owns in the Town, 444 North Sea Road and 99 Miller Road, along with almost any other parcel of land in the Town." (Pl.'s Response to Mot. to Dismiss at 2, May 18, 2011, ECF No. 61.)

7

*Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). In this case, defendants argue that *Pullman* abstention should apply, and the Court should abstain from deciding plaintiff's claim that New York's SORA preempts the County and Town laws.

The *Pullman* doctrine permits a federal court to abstain from deciding a state law issue "when it appears that abstention may eliminate or materially alter the constitutional issue presented." *Ohio Bureau of Emp't Servs. et al. v. Hodory*, 431 U.S. 471, 481 (1977); *see Pullman*, 312 U.S. 496. The policy served by abstention is to "avoid the need to address difficult constitutional questions dependent on the interpretation of state law in a situation where a decision on the ambiguous state law could not 'escape being a forecast rather than a determination' and might be 'supplanted by a controlling decision of a state court.'" *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004), quoting *Pullman*, 312 U.S. at 499-500. The doctrine is an "extraordinary and narrow exception" to a district court's duty to adjudicate the case before it. *Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959).

In the Second Circuit, *Pullman* absention is appropriate where three conditions are met: (1) the state statute is "unclear or the issue of state law [is] uncertain"; (2) "resolution of the federal issue depend[s] upon the interpretation to be given to the state law"; and (3) "the state law [is] susceptible of an interpretation that would avoid or modify the federal constitutional issue." *McRedmond v. Wilson*, 533 F.2d 757, 761 (2d Cir. 1976) (quotations and citations omitted); *see Hartford Courant Co.*, 380 F.3d at 100; *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 594 (2d Cir. 1989)**.**

Based on the current submissions, the Court does not believe that the first requirement is met. Every court that has considered the state preemption issue to date has found that New York State's legislative scheme concerning sex offenders preempts the local laws. *See People v. Oberlander*, 880 N.Y.S.2d 875 (Sup. Ct. Jan. 22, 2009); *People v. Blair*, 23 Misc. 3d. 902 (Albany City Ct. Feb. 18, 2009); *Doe v. County of Rensselaer*, 901 N.Y.S.2d 898 (Sup. Ct. June 29, 2009); *see also Terrance v. City of Geneva*, 10-CV-6450T, 2011 U.S. Dist. LEXIS 69222, at *18 (W.D.N.Y. June 28, 2011). Therefore, it appears that the state law issue is clear.

Additionally, the second requirement is not met in this case. Resolution of the constitutional issues does not *depend* upon the Court's interpretation of the state law issue. This Court's holding as to whether New York's SORA preempts the town and county laws has no bearing on the resolution of the constitutional issues.

A court faced a similar situation in *Canaday v. Koch*, 608 F. Supp. 1460, 1467 (S.D.N.Y. 1985). In that case, homeless mothers sued the commissioner of the New York City Human Resources Administration ("HRA"), claiming that HRA violated certain state statutes, the New York Constitution, and the Equal Protection Clause of the Fourteenth Amendment when it failed to provide plaintiffs with emergency housing. *Id.* at 1463. Defendants urged the court to abstain on *Pullman* grounds. *Id.* at 1466. The Southern District declined, explaining that the second requirement was "plainly" not met, rendering *Pullman* abstention "inapplicable":

> It requires that the constitutional issue be logically dependent on resolution of the state law issue, and no such logical dependency exists in

8

this case. Whether plaintiffs were denied equal protection of the laws is a question that may be decided independently of any decision as to plaintiffs' rights under state law. It is not logically necessary to decide the state law issues first, before reaching the constitutional claim; the constitutional claim is alternative to, rather than dependent upon, the state law claims.

*Canaday*, 608 F. Supp. at 1467; *see also Sherman v. Town of Chester*, No. 01 CIV. 8884 (SAS), 2001 WL 1448613, at *3 (S.D.N.Y. Nov. 15, 2001) (a "state court decision on [the state law issue] is in no way antecedent to resolving" the federal law issues (quotations omitted)). Similarly, in the instant case, the constitutionality of the Town and County laws may be determined independently of the issue of whether SORA preempts the local laws.

Although the third requirement is met – resolving the state law issue would allow the court to avoid the federal constitutional issues – all three requirements must be met in order for a court to abstain under *Pullman*. Because the first and second requirements are not met in this case, the Court declines to abstain under *Pullman*.

### C. Pendent Jurisdiction

Plaintiff alleges that the State of New York, in adopting SORA, has preempted the field in establishing penalties for crimes involving sex offenses and in regulating and monitoring sex offenders. He argues, therefore, that the County and Town Laws violate common law preemption doctrine and New York Municipal Home Rule Law. As discussed below, the Court, in its discretion, is exercising pendent jurisdiction over the state preemption claim because, *inter alia*, the state claim arises from the same nucleus of operative facts, the result under state law is clear, and it would be dispositive of the federal constitutional claims which, at least in part, raise a substantial constitutional issue.

As a threshold matter, it is clear that the Court *may* consider the pendent state preemption claim. When a state claim and a federal claim of sufficient merit derive from a "common nucleus of operative fact," a court may exercise pendent jurisdiction over the state claim. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Here, the preemption claim and the constitutional claims arise from identical facts concerning the application of the County and Town laws to sex offenders such as the plaintiff. As to whether the federal claims are sufficiently meritorious, a "constitutional claim will support pendent jurisdiction if that constitutional claim is not 'wholly insubstantial,' 'obviously frivolous,' or 'no longer open to question.'" *Claridge House One v. Borough of Verona*, 490 F. Supp. 706, 709 (D.N.J. 1980) (quoting *Louise B. v. Coluatti*, 606 F.2d 392, 400 (3d Cir. 1979)), *aff'd* 633 F.2d 209 (3d Cir. 1980). Here, the Court concludes that the federal constitutional claims, as they relate to certain portions of the laws at issue, are not wholly insubstantial. For example, the plaintiff argues that § 428-8 of the County Law, the "Loitering prohibition," is void for vagueness under the Due Process clause. Section 428-8 states that it shall be unlawful for any Level 2 or 3 sex offender "to loiter within 100 feet of any playground, day-care center, public swimming pool, video arcade or youth center." "Loiter" is defined in § 428-2 as "[t]o remain in a certain place for no apparent reason or purpose." In *City of Chicago v. Morales*, 527 U.S. 41, 47 n.2, 51 (1999), the Supreme Court struck down a Chicago ordinance that prohibited gang members from "loitering in any public place with one or more other persons." The

ordinance defined "loiter" as "to remain in any one place with no apparent purpose." *Id.* at 47 n.2. In light of the fact that the language of County Law § 428-8 mirrors the language of the unconstitutional loitering provision in *Morales* almost exactly, plaintiff has raised a substantial issue as to whether the anti-loitering provision of the County Law, as currently drafted, is constitutional.

By contrast, there is a substantial body of case law on the state law preemption issue, with every New York court that has addressed the issue finding that SORA preempts the local laws. *See People v. Oberlander*, 880 N.Y.S.2d 875 (Sup. Ct. Jan. 22, 2009) (Rockland County sex offender residency restriction preempted by New York State law); *People v. Blair*, 23 Misc. 3d. 902 (Albany City Ct. Feb. 18, 2009) (Albany County sex offender residency restriction preempted by New York State law); *Doe v. County of Rensselaer*, 901 N.Y.S.2d 898 (Sup. Ct. June 29, 2009) (Rensselaer County sex offender residency restrictions preempted by New York State laws); *see also Terrance v. City of Geneva*, 10-CV-6450T, 2011 U.S. Dist. LEXIS 69222, at *18 (W.D.N.Y. June 28, 2011) (New York State legislative scheme establishes "that the regulation and management of sex offenders (including sex offender residency restrictions) is the exclusive province of the State" and therefore preempts the City of Geneva's sex offender residency law).

The next question is whether this Court should, in its discretion, exercise pendent jurisdiction over the preemption claim, without first addressing the constitutional claims. *United Mine Workers of Am.*, 383 U.S. at 726 ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion."). In *Siler* v. *Louisville & Nashville R.R. Co.*, 213 U.S. 175 (1909), the Supreme Court held that "state issues should be decided first and because these claims were dispositive, federal questions need not be reached." *Hagans v. Lavine*, 415 U.S. 528, 546 (1974).

> Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons. In this case we think it much better to decide it with regard to the question of a local nature, involving the construction of the state statute and the authority therein given to the commission to make the order in question, rather than to unnecessarily decide the various constitutional questions appearing in the record.

*Siler*, 213 U.S. at 193. As the Supreme Court explained in *Hagans*,

> *Siler* is not an oddity. The Court has characteristically dealt first with possibly dispositive state law claims pendent to federal constitutional claims. *See, e.g.*, *Louisville & Nashville R. Co.* v. *Garrett*, 231 U.S. 298, 303-04, 310 (1913); *Ohio Tax Cases*, 232 U.S. 576, 586-87 (1914); *Greene* v. *Louisville & Interurban R. Co.*, 244 U.S. 499, 508-09 (1917); *Louisville & Nashville R. Co.* v. *Greene*, 244 U.S. 522, 527 (1917); *Davis* v. *Wallace*, 257 U.S. 478, 482, 485 (1922); *Chicago G. W. R. Co.* v. *Kendall*, 266 U.S. 94, 97-98 (1924); *Cincinnati* v. *Vester*, 281 U.S. 439, 448-49 (1930); *Hillsborough* v. *Cromwell*, 326 U.S. 620, 629 (1946). The doctrine is not ironclad, see *Sterling* v. *Constantin*, 287 U.S. 378, 393-94, 396 (1932), but it is recurringly applied, and, at the very

10

least, it presumes the advisability of deciding first the pendent, nonconstitutional issue.

*Hagans*, 415 U.S. at 546-47.

Here, deciding the state law claim will likely make it unnecessary to consider plaintiff's constitutional claims. *See Terrance*, 2011 U.S. Dist. LEXIS 69222, at *5; *Claridge House One*, 490 F. Supp. at 710. Accordingly, the Court determines, in its discretion, that it should address the issue of whether the Town and County laws are preempted by New York State law first, before it addresses the constitutional issues. However, the focus of the Town's and the County's motions to dismiss have been standing, abstention, and the federal constitutional claims. The Town briefed the state preemption question in its motion to dismiss, *see* Town of Southampton's Mem. of Law in Support of Mot. to Dismiss, Apr. 18, 2011, ECF No. 59, and the County addressed the issue in a response to plaintiff's arguments, *see* County of Suffolk's Reply Mem. of Law in Further Support of Mot. to Dismiss, Sept. 20, 2010, ECF No. 46. However, in one submission, the County raised a procedural objection to the Court's consideration of the merits of plaintiff's state preemption argument, including any injunctive relief sought, in the absence of a formal motion from the plaintiff. (County of Suffolk's Mem. of Law in Support of Mot. to Dismiss, Oct. 9, 2009, ECF No. 20, at 1 n.1.) Therefore, in an abundance of caution, now that the Court has indicated that it will exercise supplemental jurisdiction over the state law claim, the Court will require plaintiff to formally move for summary judgment and injunctive relief on this issue and allow the parties to submit any additional briefing on this issue, if they wish.

IV. CONCLUSION

For the foregoing reasons, the Court denies defendants' motions to dismiss on the grounds of standing and *Pullman* abstention. Moreover, the Court, in its discretion, intends to exercise supplemental jurisdiction over the pendent state law claim and decide the state law preemption issue first, because it is likely to render the federal constitutional claims moot. Therefore, the Court exercises pendent jurisdiction over the state law claim – namely, whether Article I, Chapter § 428 of the Suffolk County Local Law and Article 1, §§ 215-1 through 215-5 of the Code of the Town of Southampton are preempted under New York common law and the Municipal Home Rule Law. However, because the County had raised a procedural objection at one point to the Court deciding the state law preemption issue without a formal motion by plaintiff for summary judgment and injunctive relief, the Court will require plaintiff to make that motion and allow any party to make additional submissions on the state preemption issue, if they wish. Finally, the motions to dismiss the federal claims are denied without prejudice to renewal, if necessary, after the Court addresses the state law preemption issue.

SO ORDERED.

_____
Judge Joseph F. Bianco
United States District Judge

Date:   March 30, 2012
        Central Islip, NY


\*   \*   \*

11

Plaintiff is represented by Bruce A. Barket, Quadrino Schwartz, 666 Old Country Road, Ninth Floor, Garden City, New York 11530. Defendant County of Suffolk is represented by Rudolph Max Baptiste on behalf of Christine Malafi, Suffolk County Attorney, H Lee Dennison Building, 5th Floor, 100 Veterans Memorial Hi, P.O. Box 6100, Hauppauge, NY 11788. Defendant Town of Southampton is represented by Michael Stewart Cohen, and Alesia J. Kantor, Nixon Peabody LLP, 50 Jericho Quadrangle, Suite 300, Jericho, NY 11753, and by Michael C. Sordi, Southampton Town Attorney, 116 Hampton Road, Southampton, NY 11968. Defendants Epley and Wilson are represented by Jeltje DeJong, Devitt Spellman Barrett, LLP, 50 Route 111, Smithtown, NY 11787.