UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

DUANE MOORE,

                Plaintiff,

                              MEMORANDUM
                              INVITING THE ATTORNEY
                              GENERAL OF NEW YORK
           v.                      GENERAL OF NEW YORK
                              STATE TO PARTICIPATE AS
THE COUNTY OF SUFFOLK, ET AL.,      *AMICUS CURIAE*
                              09-CV-2031 (PKC)

                Defendants.

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      The Court hereby invites the Attorney General of New York State to participate as

*amicus curiae* in this action, addressing whether New York State law preempts laws enacted by

the County of Suffolk and the Village of Southampton governing the post-conviction conduct

and monitoring of registered sex offenders within their communities.

***Background***

    I.    *Complaint*

      On May 13, 2009, Plaintiff Duane Moore ("Plaintiff") commenced this action against

defendants County of Suffolk ("County"), Town of Southampton ("Town"), Mark Epley in his

official capacity as Mayor of the Village of Southampton ("Epley"), and William Wilson, Jr. in

his official capacity as Chief of Police of the Southampton Village Police Department

("Wilson") (collectively "defendants"), seeking a declaration that Article I, Chapter § 428 of the

Suffolk County Local Law ("County Law § 428" or "County Law") and Article 1, §§ 215-1

through 215-5 of the Code of the Town of Southampton ("Town Law § 215" or "Town Law")

are unconstitutional and to enjoin defendants from enforcing them. County Law § 428 and Town

1

Law § 215 prohibit sex offenders, even after they have completed their parole terms, from living within certain distances of places such as schools, playgrounds or day-care centers.  In addition to asserting federal constitutional claims, Plaintiff alleges that New York State law preempts the County and Town Laws.

II.    *Relevant Facts*[1]

The basic facts of the case are not in dispute.  Plaintiff is classified as a Level 3 sex offender under New York State's Sex Offender Registration Act ("SORA"), N.Y. Correct. Law §§ 168 et seq.  Plaintiff has been classified as such since his May 21, 1982, guilty plea to rape in the first degree and assault in the second degree in Nassau County, for which he was sentenced to 8-1/3 to 25 years and 2-1/3 to 7 years, respectively.  On November 2, 2001, he was released to parole supervision.

On April 27, 2005, Plaintiff and his fiancé jointly purchased a home located at 444 North Sea Road in the Village of Southampton.  Before the plaintiff could occupy that home, the State of New York enacted legislation that prohibited convicted sex offenders who were on probation, conditional discharge, or parole from residing within 1000 feet of a day care center or school. *See* N.Y. Penal Law § 65.10(4-a), § 220.00(14); N.Y. Exec. Law § 259-c(14).  The New York State Division of Parole prohibited Plaintiff from residing at 444 North Sea Road as it was located within 1000 feet of a day care center.

In October 2006, Plaintiff's parole officer verbally granted Plaintiff permission to purchase a house located at 99 Miller Road in the Village of Southampton, which is in the County of Suffolk.  Plaintiff closed on the purchase on December 15, 2006 and moved into the

---

[1] This factual background is taken generally from the March 30, 2012, decision of the Honorable Joseph F. Bianco, who previously presided over this action.  *See Moore v. Suffolk County*, 851 F. Supp. 2d 447, 451-52 (E.D.N.Y. 2012).

house with his fiancé.  On December 22, 2006, Plaintiff's parole officer updated Plaintiff's parole conditions to reflect the change of address.  On January 3, 2007, Plaintiff registered his new address with the New York State Division of Criminal Justice Services, Sex Offender Registry.  Two days later, plaintiff visited the Southampton Police Department and informed Detective Herman Lamison that he needed to register as a Level 3 Sex Offender.  Plaintiff provided Detective Lamison with the names and addresses of his parole officer, employer, family members, and friends, as well as his previous address and police jurisdiction.

On January 22, 2007, the Southampton School District sent a letter to the parents of school children containing the Plaintiff's photograph and details from a website informing them that a dangerous Level 3 sex offender had moved to the Town.  On January 29, 2007, Epley, Wilson, County Legislator Jay Schneiderman, and approximately 50 Southampton residents held a community meeting at a local Church to discuss Plaintiff's residence at 99 Miller Road.

On February 1, 2007, three officers of the New York State Division of Parole entered Plaintiff's home wearing bulletproof vests and carrying guns.  The officers questioned all of the visitors, forced them to leave, and searched the house.  On February 8, 2007, Wilson sent a certified letter to Plaintiff stating that Plaintiff was in violation of Suffolk County Law § 428 and would be expected to take "immediate action" to comply with the law.

On or about March 19, 2007, the Division of Parole granted Plaintiff permission to purchase a home at 168 Longview Road in Southampton.  On or about April 1, 2007, the Southampton Police Department gave Plaintiff 45 days to move from his Miller Road home. Plaintiff purchased the property at 168 Longview Road on May 8, 2007, and moved there on May 15, 2007.

Plaintiff was released from parole supervision in November 2011.  Accordingly, under applicable New York law, he has regained the right to live wherever he chooses.  However, because the County and Town Laws apply to registered sex offenders in perpetuity, Plaintiff is still restricted with respect to his place of residence.  Specifically, Plaintiff is barred from living at two of his residences, located at 44 North Sea Road and 99 Miller Road.

III.    *Motion to Dismiss*

On April 18, 2011, the County and the Town each filed a motion to dismiss Plaintiff's amended complaint.  In their motions, Defendants argued, *inter alia*, that: (1) the Court should abstain from deciding the state preemption claims under the *Pullman* doctrine, *see Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941); (2) the Court should decline to exercise pendent jurisdiction over the state preemption claim; (3) Plaintiff lacks standing to challenge the County and Town Laws without simultaneously challenging the New York State version of the law; (4) Plaintiff failed to state a claim as to any of the alleged constitutional violations; and (5) New York State law does not preempt the County and Town Laws.

On March 30, 2012, Judge Bianco issued a written decision denying the motions to dismiss.  In so doing, Judge Bianco: (1) ruled that Plaintiff met the "injury-in-fact" requirement under Article III of the U.S. Constitution and thus has standing to bring this action (*Moore*, 851 F. Supp. 2d at 454-56); (2) declined to abstain under *Pullman* from deciding the state law preemption issue (*id*. at 456-58); and (3) chose to exercise supplemental jurisdiction over the pendent state preemption claim before deciding the constitutional claims in this action (*id*. at 458-60).  Observing principles of constitutional avoidance, which dictate dealing with potentially meritorious, dispositive state claims prior to federal constitutional claims, Judge Bianco wrote, "[h]ere, deciding the state law claim will likely make it unnecessary to consider plaintiff's

4

constitutional claims."  *Moore*, 851 F. Supp. 2d at 459 (citations omitted).  However, "because

the County had [previously] raised a procedural objection [] to the Court deciding the state law

preemption issue without a formal motion by plaintiff for summary judgment and injunctive

relief," the Court withheld judgment as to the state law preemption issue, allowing Plaintiff to

make such motion and inviting all parties to make additional submissions on the state preemption

issue.  *Id.*

IV.    *Current Status of the Litigation*

On May 30, 2012, Plaintiff moved for summary judgment, arguing that the County and

Town laws "are preempted by New York State law and are unconstitutional, illegal, and

unenforceable."  (Dkt. No. 72.)   On June 11, 2012, the County of Nassau, Nassau County

Attorney John Ciampoli, and the Nassau County District Attorney Kathleen Rice, filed a motion,

seeking to appear as *amicus curiae* to oppose Plaintiff's summary judgment motion.  Nassau

County's interest in this litigation is based on its participation in a pending case before the

Nassau County Appellate Term, *People v. Diack*, No. 2011-01261 N CR (App. Term 2d Dept.

filed Dec. 20, 2011 & Apr. 20, 2012).  There, Nassau County is arguing that state law does not

preempt Nassau County's sex offender laws, which are substantially similar to the County and

Town laws at issue in this litigation.  (Dkt. No. 73.)  Judge Bianco granted Nassau County's

*amicus* request and accepted the County's *Diack* brief for consideration.  (06/12/12 ECF Order.)

Plaintiff's summary judgment motion was fully briefed as of August 8, 2012.

On March 8, 2013, after receiving "letters from Nassau County indicating that oral

argument has been scheduled in *People v. Diack* for March 21, 2013, and that the Clerk of the

Appellate Term indicated a decision could be expected within 60 days of the argument," Judge

Bianco "decided to await that decision before addressing the issue of state law that is the subject

matter of the pending summary judgment motion." (03/08/13 ECF Order.)   Oral argument

occurred on March 21, 2013, but the Appellate Term has not yet issued a decision in *Diack*.

On April 19, 2013, this matter was reassigned to the undersigned.  On June 27, 2013,

Plaintiff submitted a letter requesting that the Court rule on the pending summary judgment

motion, rather than continue to wait for a decision in *Diack,* which had been pending at that time

for ninety-eight days, over five weeks past the projected date for a decision.  (Dkt. No. 85.)

On July 1, 2013, the Court deemed Plaintiff's letter a request for renewal, which it

granted, and advised the parties that they would be notified of the need for any additional

briefing or oral argument.  The Court is now reviewing the parties' summary judgment

submissions, including briefing on the state preemption issue, and anticipates scheduling oral

argument on the summary judgment motion.  To date, no decision has been issued in *Diack*.

### *State Law Preemption*

The critical issue to be decided in the summary judgment motion proceedings is whether

New York State laws governing the post-conviction conduct and monitoring of sex offenders

preempt the County and Town laws at issue.

I.      *Laws at Issue*

1.      *Suffolk County Local Law § 428*

On February 7, 2006, the Suffolk County Legislature adopted Suffolk County Local Law

§ 428, also known as Suffolk County Local Law #12-2006.  The law prohibits registered sex

offenders from "resid[ing] within 1/4 mile of the property line of any school, including, but not

limited to, any public or private nursery, elementary, middle or high school; or a licensed day-

care center; or a playground."   Suffolk County Local Law § 428-3.  The law applies to sex

offenders registered at any sex offender level, including Levels 1, 2, and 3.

2.     *Southampton Town Law § 215*

The Town of Southampton enacted Town Law § 215 in October 2007, and amended it in December 2007. Town Law § 215 prohibits registered sex offenders from residing within "[o]ne mile of any school located in any school district that does not offer and fund transportation services to school for all students living within one mile of their respective school." Town Law § 215-2. The law also prohibits sex offenders from residing within "[t]wo thousand feet of any school located in any school district that offers and funds transportation services to school for all students living within one mile of their respective school." *Id.* Additionally, sex offenders may not reside within two thousand feet of any "child-care facility or municipal recreational facility." *Id.*

3.     *New York State Laws*[2]

a.     *New York State Sex Offender Registration Act*

New York's SORA, which became effective in 1996, provides for the establishment of a convicted sex offender registry within the New York State Division of Criminal Justice Services ("DCJS"). Sex offenders who have been convicted of certain criminal offenses against minors or of sexually violent offenses must register under SORA and periodically verify certain information. N.Y. Correct. Law §§ 168-b, 168-f. SORA provides for notification to local law enforcement when a convicted sex offender is released from incarceration. *Id.* § 168-j.

---

[2] The state laws identified in this section do not include every law that applies to the post-conviction conduct and monitoring of sex offenders—sentencing laws for example—and is not intended to be an exhaustive list. *See e.g.,* N.Y. Penal Law § 65.10(3)(a)(iii) (mandating 10 year probation terms for sex offenders); N.Y. Penal Law § 70.45 (requiring post-release supervision in addition to periods of parole supervision). The Court is interested in the Attorney General's input regarding any other laws that the State considers to be part of its statutory framework regulating the post-conviction conduct and monitoring of sex offenders.

A Board of Examiners consisting of five members appointed by the Governor uses guidelines set out in Correction Law § 168-l(5) to assess the risk of recidivism and the threat posed by the offender. Offenders may be classified as low risk (Level 1), moderate risk (Level 2) or high risk (Level 3) for repeating a sex offense. *Id*. § 168-1(6). The level assigned determines the extent of community notification that will apply to information concerning the offender.

        b.     *The Sexual Assault Reform Act – Penal Law § 65.10,*
               *Executive Law § 259-C(14)*

In 2000, the State enacted the Sexual Assault Reform Act, L. 2000, c. 1, which, *inter alia*, added provisions to the Penal Law and Executive Law prohibiting certain sex offenders on probation, parole or other early release or discharge status from entering upon the grounds of schools or child care centers. *Id*. at §§ 8, 9. As subsequently amended by L. 2005, c. 544, the law bars sex offenders on probation, parole, or similar status whose victims were under the age of 18 or who are designated as Level 3 offenders from knowingly entering a school or child care center or a public area within a thousand feet of a school. N.Y. Penal Law § 220.00.

        c.     *Sex Offender Management and Treatment Act – Mental Hygiene Law*
               *Article 19, et seq.*

The Sex Offender Management and Treatment Act, L. 2007, c. 7, Mental Hygiene Law ("MHL") Article 10, §§ 10.01 et seq., is New York's civil commitment law providing for the post-incarceration custody, treatment or supervision of certain sex offenders with mental illnesses predisposing them to the commission of further sex crimes. The law provides for an initial determination of whether a sex offender who is about to be released from prison suffers from a "mental abnormality . . . that predisposes him or her to the commission of . . . a sex offense and that results in that person having serious difficulty in controlling such conduct,"

MHL § 10.03(i); *see* §§ 10.03(1), 10.05, 10.06, 10.07(a)-(e), and, if so, a further determination of whether the offender is dangerous enough to require confinement in a secure treatment facility. *Id*. §§ 10.03(e), 10.07(f).  An offender found to have such a mental abnormality but not to be dangerous enough to require continued civil confinement is instead subject to "a regiment of strict and intensive supervision and treatment" as an outpatient.  *Id*. §§ 10.07(f), 10.11.  The supervision requirements that can be imposed by the court under this regiment may include "specification of residence or type of residence" along with a host of other conditions.  *Id*. § 10.11(a).

        d.      *Chapter 568 of the Laws of 2008 – Correction Law § 203(1) (formerly Executive Law § 259(5)), Executive Law § 243(4), Social Services Law § 20(8)*

Chapter 568 of the Laws of 2008 required the issuance of regulations specifying certain factors to consider when investigating and approving the residence of Level 2 or Level 3 sex offenders released on probation, parole or other similar programs, or when placing paroled offenders in homeless shelters.  Under Chapter 568, which is now codified in Correction Law § 203(1), Executive Law § 243(4) and Social Services Law § 20(8), the current Department of Corrections and Community Supervision, Office of Probation and Correction Alternatives, and Office of Temporary and Disability Assistance must promulgate guidelines for residence approval or homeless shelter placement, which include such factors as concentration of other sex offenders in the area, "proximity of entities with vulnerable populations," "accessibility to family member, friends or other supportive services," and "availability of permanent stable housing." N.Y. Correct. Law §§ 203(1)-(c)(d)(e); N.Y. Exec. Law § 243(4)-(c)(d)(e); N.Y. Soc. Serv. Law § 20(8)(b)-(iii)(iv)(v).

II.   *State Court Decisions Supporting Preemption*

As Judge Bianco observed in his March 30th decision, "there is a substantial body of case law on the state law preemption issue, with every New York court that has addressed the issue finding that SORA preempts the local laws.  *See People v. Oberlander,* 22 Misc.3d 1124(A), 880 N.Y.S.2d 875 (Sup.Ct. Jan. 22, 2009) (Rockland County sex offender residency restriction preempted by New York State law); *People v. Blair,* 23 Misc.3d 902, 873 N.Y.S.2d 890 (Albany City Ct.2009) (Albany County sex offender residency restriction preempted by New York State law); *Doe v. County of Rensselaer,* 24 Misc.3d 1215(A), 901 N.Y.S.2d 898 (Sup.Ct. June 29, 2009) (Rensselaer County sex offender residency restrictions preempted by New York State laws); *see also Terrance v. City of Geneva,* 799 F.Supp.2d 250, 257 (W.D.N.Y.2011)[3] (New York State legislative scheme establishes "that the regulation and management of sex offenders (including sex offender residency restrictions) is the exclusive province of the State" and therefore preempts the City of Geneva's sex offender residency law))."

Notwithstanding the preliminary consensus established by these decisions, the State's input would be of significant value and would greatly assist the Court in resolving the preemption question.

### Conclusion

Accordingly, the Court respectfully invites the Attorney General of New York State to appear as *amicus curiae* regarding the issue of state preemption of Article I, Chapter § 428 of the Suffolk County Local Law and Article 1, §§ 215-1 through 215-5 of the Code of the Town of Southampton, and to make any submissions to the Court and participate in any oral argument on this issue.  If the Attorney General accepts, he should notify the Court by letter on or before

---

[3] This is the sole federal court decision addressing the state law preemption issue.  The City of Geneva did not appeal.

September 30, 2013, or request additional time to do so.  Should the Attorney General choose to

submit briefing or otherwise participate in the proceedings, he should propose a date for filing an

initial brief in his letter to the Court.  The parties to this action will be permitted to file

responsive supplemental submissions to any filing by the Attorney General.


Dated:  August 14, 2013
       Brooklyn, New York                      SO ORDERED.

                                            /s/ Pamela K. Chen
                                            PAMELA K. CHEN
                                            UNITED STATES DISTRICT JUDGE